UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **ELSIE E. DOMINGUEZ,**<br><br>Plaintiff,<br><br>v.<br><br>**UNITED STATES OF AMERICA,**<br><br>Defendant. | **Case No. 23-cv-22724 (GC)(JBD)**<br><br>**PLAINTIFF'S OPPOSITION TO THE UNITED STATES' MOTION TO STAY OR, IN THE ALTERNATIVE, MOTION TO TRANSFER VENUE** |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO UNITED STATES' MOTION TO STAY OR, IN THE ALTERNATIVE, MOTION TO TRANSFER VENUE**

**TABLE OF CONTENTS**

I. INTRODUCTION ........................................................................................................... 1

II. BACKGROUND ............................................................................................................ 2

III. LEGAL STANDARD .................................................................................................... 4

   A. RULE 12(B)(1) ........................................................................................................... 4

IV. ANALYSIS ..................................................................................................................... 5

   A. THE SEXUAL ASSAULT OF A CIVILIAN MARINER WHILE SLEEPING IN HER PRIVATE QUARTERS WHILE OFF DUTY CATEGORICALLY DOES NOT OCCUR IN THE PERFORMANCE OF HER DUTIES ........................................................................................................................ 5

   B. THE UNITED STATES' SO-CALLED "ADVISORY OPINION" FROM DOL DOES NOT CREATE A SUBSTANTIAL QUESTION OF FECA COVERAGE .......................................................... 10

   C. VENUE IS PROPER IN THE DISTRICT OF NEW JERSEY ............................................. 12

V. CONCLUSION ............................................................................................................. 13

# TABLE OF AUTHORITIES

**Cases**

*Constitution Party of Pa. v. Aichele*, 757 F.3d 347 (3d Cir. 2014) ................................................... 4

*Couch v. Cro-Marine Transp., Inc.*, 725 F. Supp. 978 (C.D. Ill. 1989) ......................................... 9

*D'Angelo v. United States*, 588 F. Supp. 9 (W.D.N.Y. 1983) ....................................................... 12

*DeFilippo v. United States*, No. 98 CIV. 3085, 1998 WL 846120 (S.D.N.Y. Dec. 2, 1998) ... 8, 12

*DeGironimo v. United States*, No. 2:18-cv-14594, 2020 WL 13561291 (D.N.J. Mar. 9, 2020) .. 11

*DiPippa v. United States,* 687 F.2d 14 (3d Cir. 1982) .................................................................. 10

*Hartig Drug Co. Inc. v. Senju Pharm. Co.*, 836 F.3d 261 (3d Cir. 2016) ...................................... 4

*Horton v. United States*, 144 F. App'x 931  (3d Cir. 2005) ........................................................... 5

*In re Knispel*, 2005 WL 6108980, 56 E.C.A.B. 639 (July 25, 2005) ......................................... 6, 8

*In re S.K.*, No. Docket No. 10-1553, 2011 WL 1734668 (ECAB Mar. 21, 2011) ....................... 12

*In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235 (3d Cir. 2012) ............................................................................................................................................ 4

*In the Matter of Leo Boyd Purrinson & U. S. Postal Serv., Post Off., Newark*, N. J., 30 E.C.A.B. 644 (Apr. 3, 1979) ......................................................................................................................... 6

*Johansen v. United States,* 343 U.S. 427 (1952) ............................................................................ 9

*Jones v. Halliburton Co.*, 791 F. Supp. 2d 567 (S.D. Tex. 2011) ............................................... 6, 7

*Kennedy v. Pineland State Bank*, 211 Ga. App. 375 (1993) .......................................................... 9

*Lower v. Cook*, 691 F. Supp. 356 (M.D. Ga. 1988) ....................................................................... 9

*O'Leary v. Brown-Pac.-Maxon*, 340 U.S. 504 (1951) ................................................................ 6, 8

*Painter v. Atwood*, 912 F. Supp. 2d 962 (D. Nev. 2012) ............................................................. 11

*Petruska v. Gannon Univ.*, 462 F.3d 294 (3d Cir. 2006) ............................................................... 4

*Price v. Lunan Roberts, Inc.*, -- N.E.3d --, 2023 IL App (1st) 220742 (Ill. App. Ct. 2023) ............ 9

*Ritchie v. United States*, 210 F. Supp. 2d 1120 (N.D. Cal. 2002) .......................................... 6, 7, 8

*S.K.*, No. 18-1411, 2020 WL 5513626 (ECAB July 22, 2020) ............................................... 11, 12

*Simon v. Morehouse Sch. Of Med.*, 908 F. Supp. 959 (N.D. Ga. 1995) ........................................ 9

**Statutes**

46 U.S.C. § 30901 *et seq.* .............................................................................................................. 15

46 U.S.C. § 30906(a) ............................................................................................................... 15

46 U.S.C. § 30906(a)(1) ........................................................................................................... 15

46 U.S.C. § 31102 .................................................................................................................... 14

5 U.S.C. § 8102(a) ..................................................................................................................... 5

5 U.S.C. § 8116(c) ..................................................................................................................... 5

**Other Authorities**

DFEC Procedure Manual ("DOL Manual"), Part 2—Adjudication of Claims, Assault Cases,
    Chapter 2-0804(10) ............................................................................................................ 11

I. **INTRODUCTION**

The United States takes the astonishing position in this case that the possibility of being raped by the ship's captain while sleeping in one's private quarters is a part of a mariner's job duties aboard a U.S. Navy ship. On these grounds, the United States contends that this Court lacks subject matter jurisdiction because Ms. Dominguez can recover for the harm caused by her rape only through worker's compensation under the Federal Employees' Compensation Act ("FECA"). That assertion is not only wrong as a matter of law, but also offensive to civilian mariners and to society's notion of decent working conditions.

Despite the United States' shocking contentions, there is no "substantial question" as to whether the sexual assault Ms. Dominguez experienced falls within the scope of FECA. Ms. Dominguez was raped by a Navy captain with whom she had a pre-existing relationship, while she was asleep in her private quarters during off-duty hours. Further distancing the rape from her employment, the sexual assault occurred after a social excursion to a bar on shore. This set of facts categorically does not occur within the performance of her duties. The Complaint in this matter alleges that the United States' negligence allowed the sexual assault to occur and, accordingly, it must be held to account. The United States cannot avoid liability for its negligence, nor avoid its responsibility to remedy the intentional shipboard safety failures that caused Plaintiff to be raped, by asserting that a sexual assault by the ship's captain is an expected and incidental risk of performing duties on the ship.

Further, as Ms. Dominguez's injuries were not caused *by* or *by the operation of* a public vessel of the United States, but instead from injuries caused by an individual on a public vessel of the United States, venue is proper in this Court under the Suits in Admiralty Act.

Accordingly, Plaintiff Elsie E. Dominguez ("Plaintiff"), by and through her counsel, respectfully requests that this Court deny the United States' Motion to Stay and Motion to Transfer Venue, ECF No. 16, and order it to answer the Complaint.

## II.  BACKGROUND

Plaintiff Elsie E. Dominguez first met the eventual Captain of the *USNS Carson City* in 2014 when Ms. Dominguez was the Third Assistant Engineer aboard a different ship. Complaint, ECF No. 1 ("Compl.") ¶ 15. Ms. Dominguez had a cordial and friendly relationship with the Captain in 2014 and 2015 where they occasionally spent time together when off-duty. Compl. ¶ 16. In the ensuing years, the Captain and Ms. Dominguez maintained sporadic contact through exchanging social messages.

Ms. Dominguez encountered the Captain again after coming aboard the *USNS Carson City* in October 2021 as the First Assistant Engineer. From the beginning of her employment on the *USNS Carson City*, the Captain attempted to rekindle a friendship with Ms. Dominguez, which quickly led to him making sexual advances toward her. Compl. ¶¶ 15, 16, 19. On one occasion aboard the ship, Ms. Dominguez reluctantly engaged in sexual relations with the Captain. Compl. ¶ 19. Soon after it was over, Ms. Dominguez explicitly instructed the Captain that she did not enjoy the encounter and did not wish to have any kind of romantic or sexual interaction with him moving forward. Compl. ¶ 20. However, despite Ms. Dominguez's explicit rejection, the Captain frequently attempted to engage in an ongoing sexual relationship with her in the following weeks. Compl. ¶¶ 21, 23.

Ultimately, the Captain escalated his conduct on the night of December 18, 2021, when he raped Ms. Dominguez. That night, Ms. Dominguez, the Captain, and other crew members were off duty, socializing at a bar on shore. While there, Ms. Dominguez became excessively

intoxicated, likely from her drink being drugged, and had to be helped back to her room on the ship by two crew members. Once in her room, Ms. Dominguez passed out asleep in her bed. Later that night, the Captain used his master key code to enter Ms. Dominguez's private quarters, while she was sleeping, and raped her as she lay incapacitated in her bed. Compl. ¶¶ 17, 25, 30-38.

While the Captain's actions that night are horrific, the U.S. Navy also played a substantial role in what happened to Ms. Dominguez. The U.S. Navy's negligence allowed the Captain to sexually assault Ms. Dominguez, including by:

- Failing to properly supervise the vessel, Compl. ¶¶ 102, 109;

- Placing the *USNS Carson City* under the command of a Captain known to habitually abuse alcohol, Compl. ¶¶ 71–72;

- Failing to maintain proper sign-in/sign-out records for the *USNS Carson City* from December 18, 2021, Compl. ¶ 47 n.1;

- Failing to maintain an adequate master key control system contrary to 46 U.S.C. § 3106(a) and industry best practices, Compl. ¶¶ 86–89;

- Failing to install and properly maintain audio and video surveillance equipment in passageways with staterooms contrary to 46 U.S.C. §§ 4901(c)(1)-(2) and industry best practices, Compl. ¶¶ 90–93;

- Allowing the Captain to have unrestricted access to crew members' staterooms, Compl. ¶¶ 102, 109;

- Failing to provide adequate training to the vessel crew and Captain, Compl. ¶ 95; and

- Instituting an inadequate system for reporting sexual assaults, whereby assault victims were deterred from making reports, Compl. ¶ 94.

On June 16, 2023, Ms. Dominguez submitted an administrative claim to the U.S. Navy describing how she was sexually assaulted and detailing the U.S. Navy's negligence.[1] Compl. ¶ 8.

---

[1] Filing an administrative complaint is a necessary prerequisite to filing a Federal Torts Claims Act. Although Ms. Dominguez did not ultimately pursue an FTCA claim, she was preserving all of her options by filing the administrative complaint with the U.S. Navy.

3

On July 17, 2023, the Navy denied Ms. Dominguez's claim, asserting that FECA worker's compensation was her exclusive remedy. Compl. ¶ 8. Ms. Dominguez vehemently denies that the rape she experienced is covered by FECA. Accordingly, on November 29, 2023, Ms. Dominguez filed suit before this Court alleging claims under the Jones Act and unseaworthiness. ECF No. 1. On February 13, 2024, the Government filed the instant Motion to Stay. ECF No. 16.

### III.    LEGAL STANDARD

#### A.    Rule 12(b)(1)

Under Rule 12(b)(1), "a court must grant a motion to dismiss if it lacks subject-matter jurisdiction to hear a claim." *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012) ("*Temodar*"). "The first step in analyzing a jurisdictional challenge under a Rule 12(b)(1) motion is to determine whether the motion presents a 'facial' attack or a 'factual' attack on the claim at issue, because that distinction determines how the pleading must be reviewed." *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 357–58 (3d Cir. 2014) (internal quotation marks omitted) (quoting *Temodar*, 678 F.3d at 243). "A facial 12(b)(1) challenge, which attacks the complaint on its face without contesting its alleged facts, is like a 12(b)(6) motion in requiring the court to consider the allegations of the complaint as true." *Hartig Drug Co. Inc. v. Senju Pharm. Co.*, 836 F.3d 261, 268 (3d Cir. 2016) (internal quotation marks omitted) (citing *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 n.3 (3d Cir. 2006)). A factual 12(b)(1) challenge "attacks allegations underlying the assertion of jurisdiction in the complaint, and it allows the defendant to present competing facts." *Hartig Drug*, 836 F.3d at 268 (quoting *Constitution Party of Pa.*, 757 F.3d at 358). Here, the United States has conceded that it is not

4

attacking Plaintiff's version of events.[2] ECF No. 16-1 at 7. Accordingly, the Motion to Stay is a facial challenge where deference must be granted to the allegations in the Complaint.

IV. ANALYSIS

### A. The Sexual Assault of a Civilian Mariner While Sleeping in her Private Quarters While Off Duty Categorically Does Not Occur in the Performance of her Duties

The central issue here is whether FECA, the federal worker's compensation statute, is applicable to these facts. FECA states that the "United States shall pay compensation . . . for the disability or death of an employee resulting from personal injury sustained while in the performance of his duty. . ." 5 U.S.C. § 8102(a). Although FECA is the exclusive remedy for an injury within its coverage, 5 U.S.C. § 8116(c), FECA does not cover *any* injury to a federal employee but rather *only* those that arise in the performance of an employee's duties. *See Horton v. United States*, 144 F. App'x 931, 932 (3d Cir. 2005) (quoting 5 U.S.C. § 8102(a)) ("[FECA] provides an exclusive and comprehensive worker's compensation scheme to federal employees for injuries that are 'sustained while in the performance of [their] duty.'").

FECA applies only where a federal employee suffers an injury "(1) at a time when the employee may reasonably be said to be engaged in his master's business; (2) at a place where he may reasonably be expected to be in connection with his employment; and (3) while he was reasonably fulfilling the duties of his employment or engaged in doing something incidental thereto; and (4) when it is the result of a risk involved in the employment or the risk is incidental to the employment or to the conditions under which the employment is performed." *In re Knispel*,

---

[2] In its Motion, the United States explicitly stated: "When, *as here*, 'a defendant does not challenge the facts alleged in the plaintiff's pleadings, a court may rule on the motion by accepting these allegations as true.'" ECF No. 16-1 at 7 (emphasis added). Further, the United States noted that "[t]he information contained in these exhibits does not contradict Plaintiff's presentation of fact." ECF No. 16-1 at 7 n.5.

2005 WL 6108980, 56 E.C.A.B. 639, 642 (July 25, 2005). Each element must be satisfied. However, even these four factors "alone [are] insufficient to establish entitlement to benefits for compensability"—there must also be "a causal concept that the employment caused the injury . . . the facts of the case must show that substantial employer benefit is derived or an employment requirement gave rise to the injury." *Id.*; *see also In the Matter of Leo Boyd Purrinson & U. S. Postal Serv., Post Off., Newark*, N. J., 30 E.C.A.B. 644 (Apr. 3, 1979) ("[T]he test must be whether, under all the circumstances, a causal relationship exists between the employment itself, or the conditions under which it is required to be performed, and the resultant injury."). Courts have described this test as an evaluation of whether an employee's injury is "related to the special zone of danger created by an obligation or condition of employment." *Ritchie v. United States*, 210 F. Supp. 2d 1120, 1125 (N.D. Cal. 2002) (collecting cases); *see also O'Leary v. Brown-Pac.-Maxon*, 340 U.S. 504, 507 (1951) (applying this standard to recovery under the Longshoremen's and Harbor Workers' Act).

Ms. Dominguez's injury does not meet these requirements and thus FECA coverage cannot apply. Ms. Dominguez was attacked in her sleep and raped in her own bed during off-duty hours. Compl. ¶¶ 33-41. She was, in no fashion, "engaged in [her] master's business" at the time of the assault. *In re Knispel*, 56 E.C.A.B. at 642. Further, to satisfy the requirements of the FECA test, the government would need to contend that being raped by the Captain of a U.S. naval vessel was "a risk involved in [her] employment." In addition to being morally reprehensible, this argument is neither factually accurate nor legally defensible.

In *Jones v. Halliburton Co.*, the court found that injuries to the plaintiff resulting from her being raped in her own barracks bed did not arise out of her employment for purposes of the

6

exclusive remedy provision of the Defense Base Act ("DBA").[3] *Jones v. Halliburton Co.*, 791 F. Supp. 2d 567, 583–88 (S.D. Tex. 2011). Specifically, the court noted that the plaintiff was "attacked at night, while she was in her barracks room, and when she was off-duty." *Id.* at 587. The court also stated that the plaintiff being sexually assaulted in her bed was not a "risk *distinctly* associated with living in [employer]-provided housing." *Id.* at 586 (emphasis in original). Further, the court noted that if "the mere fact of employment in a dangerous place brings an employee's injury under the DBA's provisions. . . [this] would make superfluous the DBA's requirement that the injury be within the course or scope of employment." *Id.* at 585. In concluding this analysis, the court stated:

> We view the situation in which Jones suffered her injuries as so far from her employment and so thoroughly disconnected from the service to her employer that it would be entirely unreasonable to say that the injuries she suffered arose out of and in the course of her employment.

*Id.* at 587–88. Although the *Jones* case is based on the DBA, the concept is highly analogous to FECA. As in *Jones*, the mere fact that Ms. Dominguez lived on her employer's premises does not render everything that happened to her there into worker's compensation.

Cases analyzing FECA coverage have reached similar conclusions. In *Ritchie v. United States*, the plaintiff was "unwittingly drugged by the federal government at a holiday party on federal property during business hours." 210 F. Supp. 2d 1120, 1125 (N.D. Cal. 2002). The court found that FECA did not apply and stated "[t]hat plaintiff's alleged injuries occurred on federal property was fortuitous; he could just as easily have been injured elsewhere." *Id.* Further, the *Ritchie* court found that:

---

[3] The DBA and the FECA employ similar eligibility standards, including the requirement that injuries arise in the performance of a claimant's job duties. *See Jones*, 791 F. Supp. 2d at 585 n.11 (drawing from FECA case law to analyze DBA coverage).

7

> Plaintiff could not have contemplated the alleged injury when he accepted federal employment. . . To find these fantastic injuries occurred in the performance of plaintiff's duties stretches the zone of danger beyond its limits. Accordingly, the court finds that plaintiff's injury did not arise in the performance of his duties."

*Id.* at 1125–26.

Similarly, in *DeFilippo v. United States*, No. 98 CIV. 3085 (AGS), 1998 WL 846120, at *1 (S.D.N.Y. Dec. 2, 1998), the court found "no substantial question" of FECA coverage. In *DeFilippo*, the plaintiff, who was a civilian employee at a tailor shop located at West Point, *Id.* at *1, sustained injuries after tripping on the grounds of West Point. *Id.* The plaintiff filed suit against the government, alleging that the fall resulted from defendant's negligence in failing to maintain the road properly. *Id.* In reviewing the Government's Motion to Stay, based on similar contentions made by the United States here, the Court in *DeFilippo* denied the motion and found "no substantial question as to whether plaintiff's injuries are covered under FECA" as the plaintiff was "walking home from *where* she worked" at a time unconnected to her work duties. *Id*.

As in *Richie* and *DeFillipo*, Ms. Dominguez's injury does not present a substantial question of FECA coverage. Ms. Dominguez's rape by her ship's captain did not occur during her "master's business" and was not a risk or condition incidental to her employment. Like the plaintiffs in *Richie* and *DeFillipo*, the mere fact that Ms. Dominguez was present at her workplace (which was also her home) when she was injured is insufficient to establish FECA coverage. *See also In re Knispel*, 2005 WL 6108980, 56 E.C.A.B. 639, 642 (July 25, 2005) ("The mere fact that an injury occurs on an industrial premises following a reasonable interval after working hours is not sufficient to bring the injury within the performance of duty."). Furthermore, the potential for being sexually assaulted while asleep in one's private quarters during off-duty hours by the officer in charge clearly does not fall within a "special zone of danger" of employment on the ship. *See Ritchie*, 210 F. Supp. 2d at 1125; *O'Leary*, 340 U.S. at 507. It is inconceivable that the laws of the United States

8

consider rape by a superior a natural, incidental, or anticipated risk of employment on a ship.[4] Far from being a result of workplace interactions, Ms. Dominguez was targeted by the ship's Captain due to their pre-existing relationship. She met the Captain seven years earlier and had sporadically been in touch with him over the intervening years. This pre-existing relationship is at the crux of what happened to Ms. Dominguez.

State law provides further support for the conclusion that Ms. Dominguez's injury falls outside of FECA. As the United States notes in its brief, "in the performance of duty" has been interpreted as the equivalent of the "commonly found prerequisite in workers' compensation law." ECF No. 16-1 at 11; *see also, e.g.*, *Lower v. Cook*, 691 F. Supp. 356, 358 (M.D. Ga. 1988) ("FECA provides essentially the same rights as the state worker's compensation law."); *Couch v. Cro-Marine Transp., Inc.*, 725 F. Supp. 978, 981 (C.D. Ill. 1989) (FECA "nearly identical" to state worker's compensation statute). Courts analyzing state workers' compensation laws have been unwilling to find that such laws cover sexual assault at the workplace. *E.g.*, *Kennedy v. Pineland State Bank*, 211 Ga. App. 375, 375 (1993) (risk of sexual abuse not connected to employment responsibilities); *Simon v. Morehouse Sch. Of Med.*, 908 F. Supp. 959, 971 (N.D. Ga. 1995) (sexual assault did not arise out of work-related dispute); *Price v. Lunan Roberts, Inc.*, -- N.E.3d --, 2023 IL App (1st) 220742, at *3 (Ill. App. Ct. 2023) ("where a physical confrontation between two employees is purely personal in nature, the resulting injuries cannot be said to have arisen out of the employment").

---

[4] The seventy-year-old Supreme Court decision in *Johansen* relied upon by the Government does not require otherwise. In *Johansen*, the injuries at issue were a carpenter's lacerated leg during the performance of his duties aboard a ship and the death of an engineer when an Army tugboat was destroyed by the enemy in Europe during World War II. *Johansen v. United States*, 343 U.S. 427, 429–30 (1952). Those circumstances bear little resemblance to an off-duty rape by a ship's captain.

Both federal law and state law point to the indisputable conclusion that, on these facts, FECA does not apply to Ms. Dominguez's situation.

### B. The United States' So-Called "Advisory Opinion" From DOL Does Not Create a Substantial Question of FECA Coverage

The United States' submission of the Department of Labor's ("DOL") "advisory opinion" is a self-serving declaration prepared solely to advance its litigation position and should not be given weight. *See Ritchie*, 210 F. Supp. 2d at 1126 (striking Government's "self-serving declaration" submitted in an attempt to show a substantial question of FECA coverage).[5] Furthermore, the United States' self-serving, made-for-litigation declaration from DOL is wrong as a matter of law. The "advisory opinion" notes that FECA applies where the injury "arises out of an activity directly related to work or to the work environment." ECF No. 16-6 at 4. In support of this proposition, the "advisory opinion" cites to DFEC Procedure Manual ("DOL Manual"), Part 2—Adjudication of Claims, Assault Cases, Chapter 2-0804(10). ECF No. 16-6 at 4. However, the DOL Manual states that if the assault "arose out of a personal matter having no connection with the employment . . . the evidence must show whether it was materially and substantially aggravated by the work association."[6]

In this case, Ms. Dominguez was the target of the Captain's assault as a result of their pre-existing personal relationship, not from their status as coworkers. *See* Compl. ¶¶ 15-24 (describing personal relationship of Ms. Dominguez and the Captain prior to and during their co-employment).

---

[5] *DiPippa v. United States* is distinguishable from the present situation. In *DiPippa*, the Third Circuit found a substantial question about FECA coverage based on a preexisting DOL policy pronouncement, not a declaration prepared solely for the purposes of litigation. 687 F.2d 14, 17 (3d Cir. 1982). Here, there is no such explicit DOL policy pronouncement would create a substantial question regarding Dominguez's situation.

[6] DFEC Procedure Manual, Part 2—Adjudication of Claims, Assault Cases, Chapter 2-0804(10), https://www.dol.gov/agencies/owcp/FECA/regs/compliance/DFECfolio/FECA-PT2/group1#2080410 (last visited Feb. 14, 2024).

10

Nothing about their work association "materially and substantially aggravated" the assault. *See, e.g.*, *Painter v. Atwood*, 912 F. Supp. 2d 962, 966 (D. Nev. 2012) (insufficient nexus between assault and employment when victim and assailant knew each other prior to co-employment and interacted outside of work).

The situation here is in contrast to *DeGironimo v. United States*, No. 2:18-cv-14594, 2020 WL 13561291 (D.N.J. Mar. 9, 2020), relied upon heavily in the United States' brief, which involved hazing during the workday stemming out of work (not personal) associations. The *S.K.*, No. 18-1411, 2020 WL 5513626 (ECAB July 22, 2020), opinion also cited by the United States is qualitatively different than the factual circumstances before this Court. There, the Board found FECA coverage for an employee sexually assaulted in her hotel room while attending a work conference, holding that "an employee on travel status or a special mission for his or her employer is under the protection of FECA 24 hours a day with respect to any injury that results from activities incidental to such duties." *Id.* at *5. Ms. Dominguez was not, however, on any sort of temporary travel status or special mission—she was raped in the place where she lived for nearly two years, from November 2021 to October 2023. Compl. ¶¶ 15, 78. Taken to its logical extreme, the United States' position suggests the untenable conclusion that civilian mariners living aboard Navy vessels for months or years at a time are covered for any injury they sustain, 24 hours a day, whether the injury occurs onboard the vessel or while on shore leave. The United States cites no case that supports such an outcome.

Moreover, even if the United States were correct that Ms. Dominguez was "on a special mission or in travel status," the United States agrees it must be the case that for FECA to apply, the "claimed conditions resulted from activities reasonably incidental to her employment." ECF

11

No. 16-1 at 11 n.7. In *In re S.K.*,[7] No. Docket No. 10-1553, 2011 WL 1734668, at *4-5 (ECAB Mar. 21, 2011), injuries sustained during a sexual assault in a hotel room at night while the employee was off duty during work travel were not covered by the FECA. The Board reasoned that "[w]hen a claimant voluntarily deviates from work activities, or activities reasonably incidental to her work, and engages in matters, personal or otherwise, which are not incidental to the duties of his or her temporary assignment, they cease to be under the protection of the Act. Any injury occurring during these deviations is not compensable." *Id.* at *4. Ms. Dominguez was asleep in her own bed following a social outing when she was attacked by someone with whom she had a pre-existing relationship, Compl. ¶¶ 25–41. As in *In re S.K.*, Ms. Dominguez's actions were separate from and not incidental to her work duties.

Ultimately, this Court has the ability to find no substantial question exists as to FECA coverage, as have other courts. *E.g.*, *DeFilippo v. United States*, No. 98 CIV. 3085 (AGS), 1998 WL 846120, at *1 (S.D.N.Y. Dec. 2, 1998); *D'Angelo v. United States*, 588 F. Supp. 9, 12 (W.D.N.Y. 1983). An off-duty, private quarters rape by a ship's Captain while the mariner was sleeping is categorically different from any case cited by the United States.

The United States' position is indefensible. In order to prevail, it would have this Court accept the proposition that rape was a risk incidental to Ms. Dominguez's employment. That cannot be the law.

### C. Venue is Proper in the District of New Jersey

Ms. Dominguez's injuries were not caused by, or by the operation of, a public vessel of the United States, which would qualify them under the Public Vessels Act. *See* 46 U.S.C. § 31102.

---

[7] Please note that there are two unrelated cases with the substantially similar titles involving the initials "S.K." *See, e.g.*, *S.K.*, No. 18-1411, 2020 WL 5513626 (ECAB July 22, 2020); *In re S.K.*,[7] No. Docket No. 10-1553, 2011 WL 1734668 (ECAB Mar. 21, 2011).

12

Rather, Ms. Dominguez's claims arise from injuries caused by an individual on a public vessel of the United States, placing them under the purview of the Suits in Admiralty Act. *See* 46 U.S.C. § 30901 *et seq*. Under the Suits in Admiralty Act, the proper venue for any given action can be found "in the district court of the United States for the district in which -- (1) any plaintiff resides or has its principal place of business; or (2) the vessel or cargo is found." 46 U.S.C. § 30906(a).

Here, Ms. Dominguez resides in the district of New Jersey. Compl. ¶¶ 9, 78. Irrespective of the location of the *USNS Carson City* when this case was filed, venue is therefore proper in the federal District Court for the District of New Jersey under the venue provision of the Suits in Admiralty Act, 46 U.S.C. § 30906(a)(1), which is not superseded by any provision of the Public Vessels Act because the circumstances of Ms. Dominguez's injury bring this case under the provisions of the Suits in Admiralty Act specifically.

## V. CONCLUSION

For the foregoing reasons, Plaintiff respectfully request that the Court deny the Government's Motion to Stay and Motion to Transfer Venue in its entirety.

Dated: March 4, 2024                                    Respectfully submitted,

**ELSIE E. DOMINGUEZ**

By her attorneys,

_____
Christine Dunn (*pro hac vice*) [Primary Contact]
Frank Tong Xu (*pro hac vice*)
Shannon Henris (*pro hac vice*)
**SANFORD HEISLER SHARP, LLP**
700 Pennsylvania Ave. SE, Suite 300
Washington, DC 20003
Phone: (202) 499-5214

13

cdunn@sanfordheisler.com
fxu@sanfordheisler.com
shenris@sanfordheisler.com

David Tracey (NJ Bar # 81062013)
Andrew Macurdy (NJ Bar # 185212016)
Carolin Guentert (*pro hac vice*)
**SANFORD HEISLER SHARP, LLP**
17 State Street, Suite 3700
New York, NY 10004
Telephone: (646) 402-5650
dtracey@sanfordheisler.com
amacurdy@sanfordheisler.com
cguentert@sanfordheisler.com

J. Ryan Melogy *
**Maritime Legal Solutions, PLLC**
276 Fifth Ave., Suite 704-1454
New York, NY 10001
Phone: (347) 562-9119
maritimelegalsolutions@pm.me

*Attorneys for Plaintiff*


* *pro hac vice forthcoming*

14